IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

JOLYNNE OVERPECK and
SHANE OVERPECK                                                              PLAINTIFFS

V.                                                          CAUSE NO.: 1:12-CV-124-SA-DAS

ROGER'S SUPERMARKET, LLC                                                     DEFENDANT

MEMORANDUM OPINION

Presently before the Court is Defendant's Motion for Summary Judgment [40]. For the reasons set forth below, that motion is granted in part and denied in part.

*Factual and Procedural Background*

The present controversy arises out of a slip and fall incident occurring at Roger's Supermarket on September 27, 2011. Plaintiffs Jolynne Overpeck and Shane Overpeck, husband and wife, travelled to Roger's Supermarket on the subject date in order to purchase a beef brisket for a barbecue. As Jolynne Overpeck was surveying the meat selection, she allegedly slipped on a liquid substance near the base of the meat cooler. Although Overpeck was unable to identify the substance, she alleges that it was roughly the size of a dinner plate in diameter and was slightly discolored. She recounts that it had no discernible odor and does not recall the liquid getting on her clothing. Prior to the fall, Overpeck had previously passed through the same section, but had not noticed any liquid on the floor. Shane Overpeck, who had been browsing in another portion of the store, quickly came to his wife's aid. However, he too was unable to positively identify the substance.

After the fall, supermarket employees responded to the area and attempted to both aid Overpeck and to clean up the potential hazard. Kevin Suggs, the assistant manager in the meat

department, testified that he called a store manager over to the department and began cleaning up the spill once he was made aware of the situation. Although no supermarket employee testified that the substance could be positively identified, a number of employees believed that the liquid might have been chicken juice. Further, shortly after the incident, store co-owner Brian Garner sent himself an email stating that Overpeck "slipped and fell on some chicken juice on floor."

According to store employees, chicken is restocked at the supermarket on a daily basis. The chicken is often shipped to the store in bulk and then repackaged into individual Styrofoam containers for retail sale. Roger's employee Sandra Rogers, who is in charge of running the wrapping machine and often stocks the meat cooler, testified that she recalls re-stocking the chicken supply approximately thirty to forty minutes before Overpeck's fall. Rogers also testified that she used one of the meat department's shopping carts to transport the chicken and that, although she could not positively attest, she likely placed butcher paper in the bottom of the cart before wheeling it into the retail area of the store. Further, Rogers denied that the liquid could be attributed to her actions in stocking the chicken, stating that "when you first bring it out, you know it's packaged good and it's not juicy because they prevent—they use everything, you know, to drain the chicken before they tray it up."

Nonetheless, other store employees testified that chicken is prone to leak, and that juices occasionally need to be wiped up in the meat department of the retail area. Additionally, employees also stated that the store adopted a policy of lining the meat department stocking carts with butcher paper to avoid employee-created drips during stocking, and Rogers could not affirmatively recall whether she had lined the buggy on the day in question.

Defendant has filed the present motion for summary judgment arguing that Plaintiffs cannot, as a matter of law, establish that Defendant either breached its duty of care or caused an

unreasonably dangerous condition. Plaintiffs, on the other hand, argue that there is sufficient evidence for a jury to conclude that Defendant either caused the dangerous condition or had actual knowledge of the danger and failed to warn of its presence.

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, 106 S. Ct 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). However, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine

3

issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little, 37 F.3d at 1075.

*Discussion and Analysis*

"Premises liability analysis under Mississippi law requires three determinations: (1) legal status of the injured person, (2) relevant duty of care, and (3) defendant's compliance with that duty." Wood v. RIH Acquisitions MS II LLC, 556 F.3d 274, 275 (5th Cir. 2009) (citing Massey v. Tingle, 867 So. 2d 235, 239 (Miss. 2004)). In the present case, it is undisputed that Plaintiff was a business invitee at the time of her accident. Accordingly, the owner or lessee had a duty to keep the business premises "reasonably safe and to warn of any dangerous condition that [was] not readily apparent." Parker v. Wal-Mart Stores, Inc., 261 F. App'x 724, 725-26 (5th Cir. 2008). However, the owner or lessee "is not an insurer of the safety of its invitees," and it is "only liable for injuries caused by a condition that is unreasonably dangerous." Id. at 726.

In order to ultimately recover in an action such as this, Plaintiff must espouse one of three theories: (1) that defendant's own negligence created a dangerous condition which caused plaintiff's injury; (2) that defendant had actual knowledge of a dangerous condition but failed to adequately warn plaintiff of the danger she faced; or (3) that, based upon the passage of time, defendant had constructive knowledge of the condition but failed to adequately warn plaintiff of the danger she faced. K-Mart Corp. v. Hardy ex rel. Hardy, 735 So. 2d 975, 980 (Miss. 1999). The Court addresses those potential avenues individually.

*A. Defendant's Own Negligence*

When the alleged dangerous condition is caused by the operator's own negligence, a plaintiff need not show the defendant's knowledge of the situation. Jerry Lee's Grocery, Inc., v. Thompson, 528 So. 2d 293, 295 (Miss. 1998). But, to show that the defendant's own negligence

4

created the unreasonably dangerous condition, the facts must provide support for more than mere speculation. See, eg, Munford, Inc., v. Fleming, 597 So. 2d 1282, 1285 (Miss. 1992); Elston v. Circus Circus Mississippi, Inc., 908 So. 2d 771, 774 (Miss. Ct. App. 2005). After all, in order to recover, the plaintiff bears the "burden of presenting significant, probative evidence that [defendant] was not only negligent, but also that such negligence was the proximate cause of the dangerous condition that resulted in [the alleged injury]." K-Mart v. Hardy ex rel. Hardy, 735 So. 2d at 981. Determining whether sufficient proof exists to draw such a conclusion requires the court to carefully examine the factual circumstances leading up to the alleged accident.

Illustratively, in Munford, the Mississippi Supreme Court analyzed a claim that was somewhat analogous to that presented here. 597 So. 2d at 1283. There, the plaintiff slipped in a puddle of water that had leaked from a bottle of spring water on a nearby display shelf. Id. Although the store attendant testified that the employees were indeed responsible for shelving the water, she maintained that she had never placed a leaking bottle on a shelf and had not shelved any bottles in a way that would have caused a leak. Id. at 1285. Additionally, the store attendant testified that during the two to three hours between the time she had last checked the aisle and the fall, at least twenty-five to thirty customers had been through the store. Id. Nonetheless, the Mississippi Supreme Court found that sufficient factual support existed for the jury to reasonably conclude that the employee's own negligence, rather than the actions of a customer, created the danger. Id.

Similarly, in K-Mart v. Hardy, the Court addressed another sufficiency of the evidence dispute in an analogous context. 735 So. 2d at 981. In Hardy, the plaintiff slipped in a puddle of paint located near a display of tiered paint cans at the end-cap of an aisle. Id. at 978. The plaintiff testified that after falling, he observed an open paint can that had fallen on the floor and

created a two to three foot puddle of paint.  Id.  In support of his theory that one of the defendant's employees had constructed the display in a faulty manner, the plaintiff relied exclusively on circumstantial evidence.  Id. at 981.

In support of his case, the plaintiff produced evidence indicating that the paint cans were placed on the display by defendant's employees, that, according to the merchandizing manager, displaying the cans in such a manner without necessary shelving material would have been unsafe, that the paint plaintiff slipped on was identical to that stacked on the display, and that the puddle was close in proximity to the subject display.  Id. at 982.  In reviewing the judgment, the court held that "[w]hile upon this evidence the jury could have found that someone other than [defendant's] employee was responsible for the paint spill, it was also possible that the jury…found [defendant's] employee improperly stacked the end-cap display or failed to place shelving material between the necessary levels of paint cans causing the paint can to fall from the display."  Id.  Thus, the court found that the plaintiff had not only met his burden of proof, but had provided "ample evidence" for the jury to find on his behalf.  Id.

In the case at hand, the Court finds that there remains a genuine dispute of material fact as to Plaintiff's negligence theory.  First, Plaintiff has produced significant evidence supporting her theory that the liquid she slipped upon was chicken juice.  Several employees recalled that the general consensus following the accident was that it might have been chicken juice and one of the store owners memorialized that finding in an email he sent to himself.  Moreover, supermarket employee Sandra Rogers testified that she restocked chicken approximately thirty to forty minutes prior to the fall and used a shopping cart to wheel the chicken to the retail area. Although she indicated that she believes she would have ensured the bottom of the cart was covered with paper to prevent dripping, she could not recall whether she had actually done so.

Further, though she testified that "when you first bring it out, you know, it's packaged good and it's not juicy," she also indicated that spills occasionally need to be cleaned up, and another supermarket employee testified that chicken is the type of meat most likely to leak. Finally, another meat department employee testified that customers are unlikely to punch holes in the meat packaging and agreed that if one was leaking, it was likely just a leaky pack of chicken. The Court therefore finds a genuine dispute of material fact exists as to whether a supermarket employee caused an unreasonably dangerous condition.

### B. *Constructive Knowledge*

As previously articulated, a plaintiff may also recover in a slip and fall case by successfully showing that, based upon the passage of time, the defendant had constructive knowledge of the condition but failed to adequately warn the plaintiff of the danger she faced. Hardy, 735 So. 2d at 980. In the case at hand, Defendant's motion for summary judgment likewise attacks Plaintiff's ability to establish liability under a constructive knowledge theory. Although Plaintiff's complaint indeed sets forth a constructive knowledge theory for recovery, Plaintiff's response to the motion for summary judgment focuses only on Defendant's own negligence and Defendant's actual knowledge of the condition. The Court therefore considers Plaintiff's constructive knowledge theory abandoned and grants Defendant's motion for summary judgment as to that contention. Keenan v. Tejada, 290 F.3d 252, 262 (5th Cir. 2002) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal."); Sanders v. Sailormen, Inc., 2012 WL 663021, at *3 (S.D. Miss. Feb. 28, 2012) ("Failure to address a claim results in the abandonment thereof.").

### C. Actual Knowledge

Finally, state law also allows recovery where the defendant had actual knowledge of a dangerous condition but failed to adequately warn plaintiff of the danger she faced. Hardy, 735 So. 2d at 980. Plaintiff here, however, has put forth no factual support for such a theory. As previously articulated by the court, "[t]he standard is whether the defendant had actual knowledge." Sullivan v. Skate Zone, Inc., 946 SO. 2d 828, 832 (Miss. Ct. App. 2007) (citing Anderson v. BH Acquisition, Inc., 771 So. 2d 914, 918 (Miss. 2000)). Plaintiff does not point to any evidence establishing that a Roger's employee actually knew that chicken juice had spilled on the floor prior to Overpeck's fall. Further, to the extent that Plaintiff may be attempting to rely on a mode of operation or proof of prior incidents to support a finding as to Roger's actual knowledge, those theories are equally without merit. First, the court has emphatically rejected a mode of operation theory of recovery, finding that it runs afoul of the well-established rule that property owners are not insurers of the safety of invitees. Sullivan, 946 So. 2d at 832 (citing Byrne v. Wal-Mart Stores, Inc., 877 So. 2d 462, 466-67 (Miss. Ct. App. 2003)).

Second, as to potential prior instances involving chicken juice in the meat department, such instances may be admitted to satisfy the plaintiff's burden only when the other accidents "happened under substantially the same circumstances" and "were not too remote in time from the accident at issue." Bonner v. Imperial Palace of Mississippi, — So. 3d —, 2013 WL 3607165, *7 (Miss. Ct. App. 2013) (citing Irby v. Travis, 935 So. 2d 884, 895 (Miss. 2006)). Plaintiff has completely failed to allege sufficient factual information to gauge either the factual circumstances regarding any other alleged instances or the temporal proximity of such incidents. Summary judgment is therefore also granted as to Plaintiff's actual knowledge theory of recovery. Little v. Liquid Air Corp., 37 F.3d 1069, 1076 (5th Cir. 1994) (holding that a dispute

of material fact is not created by metaphysical doubt, conclusory allegations, or unsubstantiated assertions).

### D. Loss of Cosortium

Defendant also seeks summary judgment as to Shane Overpeck's loss of consortium claim on grounds that it is completely derivative of his wife's claim. Because Jolynne Overpeck's negligence claim survives the motion for summary judgment and Defendant provides no further attack, Shane Overpeck's loss of consortium claim also survives.

### Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted in part and denied in part [40]. Because there remains a genuine dispute of material fact as to Plaintiff's premises liability claim based on Defendant's own alleged negligence, the Court denies summary judgment as to that theory. However, finding that judgment as a matter of law is due in favor of Defendant as to Plaintiff's actual and constructive knowledge allegations, the Court grants Defendant's motion as those theories.

SO ORDERED, this the 21st day of August, 2013.

/s/ Sharion Aycock_____
United States District Judge